UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE WALGREEN CO. STOCKHOLDER LITIGATION | : : : : : : : : : : : | Civil Action No. 1:14-cv-09786<br><br>CLASS ACTION<br><br>Judge Joan B. Gottschall<br><br>**November 20, 2015 Hearing Date** |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND .............................................................................................. 3

III. ARGUMENT ....................................................................................................................... 3

   A. The Notice Provided To The Settlement Class Satisfied Due Process .............................. 3

   B. The Settlement Meets The Seventh Circuit's Standard For Approval ............................. 4

      1. The Applicable Legal Standard .................................................................................. 4

      2. The Relevant Factors Support Final Approval Of The Settlement .............................. 5

         a. The Strength Of Plaintiffs' Case Compared To The Terms Of The Settlement Supports Approval Of The Settlement ................................................................. 5

         b. The Complexity, Length And Expense Of Further Litigation Supports Approval of the Settlement ................................................................................................. 7

         c. The Class Members Overwhelmingly Support The Settlement ............................ 8

         d. The Settlement Is the Product Of Good Faith, Arm's-Length Negotiations ........ 11

         e. Plaintiffs' Counsel Endorse the Settlement ........................................................... 11

         f. The Stage Of The Proceedings And The Amount Of Discovery Completed ....... 12

   C. The Court Should Certify The Settlement Class ............................................................. 12

IV. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Torrington Co.*,
   755 F. Supp. 834 (N.D. Ind. 1991)...................................................................................... 5

*Armstrong v. Bd. of Sch. Dirs. Of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1998)............................................................................................ 4, 5

*EEOC v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985)................................................................................................ 4

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982)................................................................................................ 5

*GE Capital Corp. v. Lease Resolution Corp.*,
   128 F.3d 1074 (7th Cir. 1997)............................................................................................. 5

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002)........................................................................................ 5

*Hispanics United of DuPage Cnty. v. Vill. of Addison*,
   988 F. Supp. 1130 (N.D. Ill. 1997) ..................................................................................... 9

*In re AT&T Mobility Wireless Data Servs. Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................................ 12

*In re Austrian & German Bank Holocaust Litig.*,
   80 F.Supp.2d 164 (S.D.N.Y. 2000) .................................................................................... 9

*In re Cmty. Bank of N. Va.*,
   No. 03-0425, 2008 U.S. Dist. LEXIS 62783 (W.D. Pa. Aug. 15, 2008) ........................... 4

*In re Mexico Money Transfer Litig.*, (W. Union & Valuta),
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................................. 11

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996).............................................................................. 4, 5, 11, 12

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................................... 9

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
   834 F.2d 677 (7th Cir. 1987)............................................................................................... 5

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
   616 F.2d 1006 (7th Cir. 1980)............................................................................................ 4

*Meyenburg v. Exxon Mobile Corp.*,
   No. 3:05-cv-15-DGW, 2006 WL 5062697 (S.D. Ill. June 5, 2006)................................... 8

*Murillo v. Pac. Gas & Elec. Co.*,
   No. Civ. 2:08-1974, 2010 U.S. Dist. LEXIS 73427 (E.D. Cal. July 20, 2010) ................. 4

*Williams v. Rohm & Haas Pension Plan*,
   No. 4:04-CV-0078, 2010 WL 1490350 (S.D. Ind. Apr. 12, 2010) .................................... 9

**Rules**

Fed. R. Civ. P. 23................................................................................................................. 3, 4

## I.  INTRODUCTION

The above-captioned consolidated putative class action (the "Action") alleged that (a) Defendants Walgreen Co. ("Walgreen" or the "Company"), Walgreens Boots Alliance, Inc. ("WBA"), and the Walgreen board of directors (the "Board" or "Walgreen Board") violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); and (b) the Walgreen Board breached its fiduciary duty of disclosure under Illinois state law.  Specifically, Plaintiffs alleged that in connection with soliciting stockholder support for a corporate reorganization (the "Reorganization") and the purchase of the portion of Alliance Boots GmbH ("Alliance Boots") that Walgreen did not already own for approximately £3.133 billion in cash and 144,333,468 shares of Walgreen common stock (the "Step 2 Acquisition"), Defendants filed a false and/or materially misleading Schedule 14A Definitive Proxy (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

Following arm's-length negotiations, Plaintiffs and Defendants (collectively, the "Parties") reached an agreement-in-principle to resolve the Action (the "Settlement").  Pursuant to that agreement, Walgreen publicly filed certain supplemental disclosures (the "Supplemental Disclosures")[1] related to the Reorganization and the Step 2 Acquisition.  Among other things, Walgreen disclosed:

- the existence and nature of a complaint filed against the Company by former Walgreen Chief Financial Officer ("CFO") Wade Miquelon ("Miquelon"), which alleged that certain Walgreen executives met with investors and made disparaging and defamatory comments about Miquelon;

---

[1] The Supplemental Disclosures are detailed in their entirety in a Form 8-K filed by Walgreen with the SEC on December 24, 2014.  A copy of the 8-K was attached as Exhibit A to the Stipulation of Settlement, dated as of July 2, 2015 (the "Stipulation of Settlement").  *See* ECF No. 25.

1

- certain risks associated with the acceleration of the Step 2 Acquisition;

- that Walgreen management met repeatedly with Walgreen stockholder and event-driven hedge fund JANA Partners LLC ("JANA") prior to Walgreen and Jana's entry into a nomination and support agreement (the "Support Agreement") pursuant to which, *inter alia*, JANA would support the Step 2 Acquisition in exchange for the ability to appoint two directors to the Walgreen Board;

- the estimated equity ownership in Walgreen of Alliance Boots Executive Chairman and Walgreen Board member Stefano Pessina ("Pessina") if the Reorganization and Step 2 Acquisition were to be consummated; and

- the reasons that Pessina was selected to serve as Acting Chief Executive Officer ("CEO") of Walgreen upon consummation of the Reorganization and Step 2 Acquisition.

The Supplemental Disclosures made pursuant to the Settlement allowed Walgreen stockholders to cast an informed vote on the Reorganization and Step 2 Acquisition and thus conferred to them a substantial benefit. Accordingly, the Settlement is fair, reasonable, adequate and in the best interests of the Class.

In an order dated July 14, 2015, this Court preliminarily approved the Settlement and certified the Class (the "Preliminary Approval Order"), thereby allowing the Parties to provide Walgreen stockholders with notice of, among other things: (a) the Action and Settlement, (b) Plaintiffs' counsel's unopposed $370,000 fee request (inclusive of expenses), and (c) the right of Class members to request exclusion from or object to the Settlement and/or fee request.

Out of the thousands (if not tens of thousands) of Class members, seven purported Class members timely-filed or mailed to counsel objections to the Settlement and/or Plaintiffs' counsel's unopposed $370,000 fee request.[2] Seven objections (purporting to represent a total of 1,145.39

---

[2] Two other purported Class Members, Reese Edwin and Shirley Ann Toole, jointly responded to the notice but did not actually object to the Settlement or Plaintiff's counsel's fee request.

2

shares of Walgreen stock) constitutes a tiny fraction of the Class and none of the arguments advanced in the objections provide a basis for this Court to question the fairness of either the Settlement or the requested attorneys' fees.[3]

Through this unopposed motion, and for the reasons further detailed below, Plaintiffs respectfully request that the Court grant final approval of the Settlement.[4]

## II. FACTUAL BACKGROUND

A detailed recitation of the facts giving rise to and the procedural history of the Action is included in the Stipulation of Settlement. *See* ECF No. 25.

## III. ARGUMENT

### A. The Notice Provided To The Settlement Class Satisfied Due Process

Before evaluating the merits of the Settlement itself, the Court must determine whether the notice of the Settlement provided to the Class was appropriate. Federal Rule of Civil Procedure ("FRCP") 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice to class members "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Id.*

Here, consistent with the FRCP and this Court's Preliminary Approval Order, copies of the short-form notice were mailed to potential Class members and the parties created a website (the

---

[3] Plaintiffs have contemporaneously filed a separate memorandum in support of their unopposed motion for an award of $370,000 in attorneys' fees (inclusive of expenses).

[4] The Parties have filed an amended Proposed Order and Final Judgment (the "Amended Final Order") as Exhibit A to this Motion. The Amended Final Order narrows the release of claims to specifically "carve-out" certain other litigation filed against Walgreen and its directors and/or officers.

"Website") which includes copies of the long-form notice and other relevant Settlement documents.[5] When the Court postponed the Final Settlement Hearing to November 20, 2015, the Website was updated to reflect such change and postcards subsequently sent to beneficial holders reflected the updated date as well. Moreover, the Parties agreed to – and did – provide any Walgreen stockholder who timely filed an objection with notice of the date change via mail.

Notice plans like the one utilized here are common in federal securities class actions and constitute valid and sufficient notice to proposed class members.[6] Accordingly, the form and manner of notice to Class members satisfies the FRCP, the Preliminary Approval Order, and due process.

### B. The Settlement Meets The Seventh Circuit's Standard For Approval

#### 1. The Applicable Legal Standard

The Seventh Circuit recognizes "an overriding public interest in favor of settlement" of class action litigation. *Armstrong v. Bd. of Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980).

In deciding whether a class action settlement merits final approval under FRCP 23(e), courts must determine whether the proposed settlement is fair, reasonable and adequate. *Isby*, 75 F.3d at 1196; *Hiram Walker*, 768 F.2d at 889; *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir.

---

[5] The URL for the website is
http://www.walgreenproxyshareholdersettlement.com/content.aspx?c=6430&sh=1.

[6] *See Murillo v. Pac. Gas & Elec. Co.*, No. Civ. 2:08-1974, 2010 U.S. Dist. LEXIS 73427, at *23, *36-37 (E.D. Cal. July 20, 2010); *see also In re Cmty. Bank of N. Va.*, No. 03-0425, 2008 U.S. Dist. LEXIS 62783, at *12-13 (W.D. Pa. Aug. 15, 2008).

4

1982).  The Seventh Circuit has identified the following factors that a Court may consider in evaluating the fairness of a class action settlement:

> 1) the strength of the plaintiffs' case on the merits measured against the terms of the settlement; 2) the complexity, length, and expense of continued litigation; 3) the amount of opposition to the settlement among affected parties; 4) the presence of collusion in gaining a settlement; 5) the stage of the proceedings; and 6) the amount of discovery completed.

*GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also Isby*, 75 F.3d at 1199.

The proceedings to approve a settlement should not be transformed into an abbreviated trial on the merits.  *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987).  As the Seventh Circuit has explained:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public.  Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong*, 616 F.2d at 315.

Finally, "[a] strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's length] negotiation."  *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citing *Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991)).

### 2.  The Relevant Factors Support Final Approval Of The Settlement

#### a.  The Strength Of Plaintiffs' Case Compared To The Terms Of The Settlement Supports Approval Of The Settlement

Plaintiffs believe that their disclosure claims were strong and that there were materially false and/or misleading statements in Walgreen's Proxy materials soliciting stockholder support

5

for the Reorganization. In connection with the Settlement, Defendants agreed to make a number of material disclosures to remedy the overwhelming majority of Plaintiffs' disclosure claims:

- Defendants disclosed the existence and nature of the former CFO's defamation complaint, providing color on the abrupt departure of a senior executive and disclosing his allegations against Company insiders.

- Defendants disclosed Pessina's expected ownership in Walgreen if the Step 2 Acquisition was consummated. This disclosure revealed the level of power and influence that stockholders were being asked to bestow upon (i) one of the Company's largest *existing* stockholders and (ii) an individual who would become not only the Company's largest stockholder, but also its CEO.

- Defendants disclosed the reasons that Pessina was selected to become Walgreen's CEO upon consummation of the Step 2 Acquisition. This disclosure was important because after Gregory Wasson's abrupt announcement of his resignation from the position of Walgreen CEO, the appointment of Pessina – already executive chairman of Alliance Boots and a director of Walgreen – represented a dramatic concentration of power. The supplemental disclosures on this topic helped mollify potential concerns regarding the rationale for Pessina's appointment to become Walgreen's top executive.

- Defendants disclosed that Pessina recused himself from certain Walgreen Board meetings because of a potential conflict of interest. This disclosure was material because it revealed Pessina's own recognition of a potential conflict of interest, and the incentives of corporate fiduciaries and potential conflicts of interests are of critical import when those fiduciaries are requesting shareholder action. Here, Pessina was recommending a transformative transaction that would benefit him – his recusal at times was necessary to preserve the integrity of Board deliberations, and stockholders were entitled to know if Board decisions were perhaps the product of undue influence or control instead of sound business judgment.

- Defendants disclosed certain risks associated with the Step 2 Acquisition. This disclosure was material because the Step 2 Acquisition and Reorganization would transform the Company – including new stock, a new global footprint and a new CEO – and the risks associated with the transformation were central to shareholders' decision whether to support it. This is particularly true because once consummated, the Step 2 Acquisition and Reorganization essentially could not be "undone" for various reasons (*e.g.*, two de-listings, massive issuances, name change, re-organization, etc.).

6

- Defendants disclosed the occurrence of certain meetings between Walgreen management and JANA. Thus, Walgreen stockholders were provided the opportunity to gauge for themselves (without relying on conflicting reports or innuendo) the appropriateness of certain meetings with large stockholders and the possible divergent motivations of certain large Company investors that might have tried to exert influence over directors and officers.

After being provided with these Supplemental Disclosures, Walgreen stockholders were able to decide for themselves, on a fully-informed basis, whether to approve the Reorganization. Further, these Supplemental Disclosures squarely addressed the concerns that gave rise to this Action. Thus, the terms of the Settlement compare favorably with the strength (and focus) of Plaintiffs' claims.

### b. The Complexity, Length And Expense Of Further Litigation Supports Approval of the Settlement

After several rounds of negotiations, Plaintiffs were able to obtain Defendants' agreement to promptly disseminate the Supplemental Disclosures in advance of the stockholder vote on the Reorganization. While Plaintiffs could have rejected the settlement proposals and pushed forward with a motion to enjoin the stockholder vote, such course of action would have been both unreasonable and irresponsible. From the outset, the sole focus of Plaintiffs' complaints was the disclosure inadequacies in Defendants' Proxy materials. Once Defendants offered to correct the overwhelming majority of these disclosure deficiencies, it would have been a waste of judicial and party resources to continue litigating issues that the parties were able to consensually resolve.

### c. The Class Members Overwhelmingly Support The Settlement

As noted above, only seven individuals[7] out of the many thousands of institutional and individual Class Members have objected to any aspect of the Settlement.[8] Further, the total number of shares purported to be held during the Class Period by the three objecting Class Members who disclosed their holdings is just 1,145.39,[9] representing an infinitesimal 0.00012% of the 945,642,298 Walgreen shares that were issued and outstanding as of November 30, 2014.[10]

The exceedingly small percentage of objectors – and reported objecting shares – indicates overwhelming support for the Settlement by the members of the Class and strongly favors final approval of the Settlement. *See*, *e.g.*, *Meyenburg v. Exxon Mobile Corp.*, No. 3:05-cv-15-DGW, 2006 WL 5062697, at *6 (S.D. Ill. June 5, 2006) (holding that nine objectors out of a class which "potentially has thousands of members" is "very small, if not miniscule" and constitutes "strong circumstantial evidence that the settlement is fair."); *Hispanics United of DuPage Cnty. v. Vill. of Addison*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small

---

[7] As noted *supra*, two other Class Members, Reese Edwin and Shirley Ann Toole, jointly responded to the notice but did not actually object to the Settlement. Rather, they made the following request: "We request that our names and addresses be removed from this action. We do not want any of the attorneys named on the card to represent us in this class action settlement and suit. We sold all Walgreen stock on 8/14/14." ECF No. 39.

[8] The Court-approved deadline for Class Members to object to the Settlement was initially October 23, 2015. When the Final Settlement Hearing was postponed to November 20, 2015, the deadline for objections was extended to November 6, 2015.

[9] Of those 1,145.39 shares, 1,000 were held by Objector David Mischel, who reported that he held 1,000 shares on just three non-consecutive days during the Class Period. *See* Objection of David Mischel, ECF No. 34, at 1 ("I held 1,000 shares of Walgreen's on August 6, 2014, August 7, 2014, and September 30, 2014."). The remaining disclosed shareholdings were reported to be held by Mr. James Coryn (100 shares), and Mr. Paul Copeland (45.39 shares). *See* ECF Nos. 42 and Ex. B to the Declaration of Mark Goldstein (the "Goldstein Declaration").

[10] *See* Walgreen Form 10-Q filed with the SEC on December 30, 2014.

number of class members objected); *Williams v. Rohm & Haas Pension Plan*, No. 4:04-CV-0078, 2010 WL 1490350, at *3 (S.D. Ind. Apr. 12, 2010) (approving settlement and finding that 150 objectors out of a settlement class of 18,000 is a "rather small number," which indicates "significant support" for the settlement), *aff'd* 658 F.3d 629 (7th Cir. 2011); *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000) (finding a small number of objectors "indicative of the adequacy of the settlement"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (finding that objection rates comparable to those here supported settlement). Relative to the number of Class members and outstanding Walgreen shares, the seven objections and less than 1,500 purported objecting shares are essentially aberrational. For this reason alone, Plaintiffs respectfully submit that the Court should disregard the seven outlier objections in deciding whether to approve the Settlement and requested fee award. *See id.*

Closer scrutiny of the objections reveals additional compelling reasons why the objections received should not interfere with the Settlement. For example, the objection of Mr. Michael Pascale, ECF No. 33, raises unfounded and generalized concerns that "these 'settlements'" are "dangerous" because they create a risk of "identity theft." *Id.* Specifically, Mr. Pascale states that "these 'settlements' are actually *dangerous* because the law firms request the Social Security numbers of shareholders and we have NO control [over] our vital information nor disclosure how [sic] it is to be used." *Id.* (emphasis in original). Though Plaintiffs and their counsel understand and empathize with Mr. Pascale's concerns about "identity theft" as a general matter, the specific concerns raised within his objection are unwarranted because Class members were not – and will never be – asked to provide their Social Security numbers in connection with the Settlement. For this independent reason, Mr. Pascale's objection should be rejected.

In addition, certain objectors expressed a belief that the type of benefit that gave rise to the Settlement – *i.e.*, therapeutic relief in the form of curative disclosures – does not warrant payment of attorneys' fees. *See*, *e.g.*, Objection of Brenda Lee, ECF No. 32 ("I have received numerous such settlement notices over the years and have never received a monetary award, so who is really benefiting from these lawsuits, which strike me as being a cash cow to someone, but not the shareholders."); Objection of David Mischel, ECF No. 34 (asserting that the lawsuit "provides no ***substantive*** benefit to the class members") (emphasis added). Statements such as these are more reflective of generalized disdain for non-monetary class action settlements than specific concerns with respect to the Settlement at issue. However, courts across the nation have confirmed the value of therapeutic relief, and the importance of incentivizing plaintiffs' attorneys to challenge corporate wrongdoing even if such challenges result in therapeutic benefits. Additionally, it is well established that attorneys' fees are justified even where the benefit achieved by a settlement is not economic or monetary.[11]

Further, the objectors who assert that members of the Class received no benefit from the action are merely expressing their own, personal beliefs. For example, Mr. Paul Copeland asserted within his objection that he had reviewed the disclosures and "found nothing which would have any impact on my decision regarding whether to vote my shares in favor of or in opposition to the acquisition." Goldstein Declaration Ex. B. Mr. Copeland, however, can only speak for himself and the less than 46 shares that he owned during the Class Period. *See id.* He cannot speak for the scores of Class members – including Plaintiffs themselves – who found value in the disclosures. Further, it is impossible to know precisely what pre-existing biases and misconceptions fueled the

---

[11] *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Expenses.

view held by Mr. Copeland – or any other objector – with respect to the Settlement at issue. Indeed, one objector readily and explicitly acknowledged that his unfavorable view of the Settlement – and settlements with non-monetary benefits in general – "are undoubtedly biased" because he "serve[s] as a lawyer and a senior executive of a publicly traded entity[.]" Goldstein Declaration Ex. B. That idiosyncratic and determinative bias underscores why it is necessary to consider the percentage of objecting Class members/shares relative to the total size of the Class.

### d. The Settlement Is the Product Of Good Faith, Arm's-Length Negotiations

The Settlement was reached following extensive, arm's-length negotiations between the Parties. As discussed *supra*, there is a presumption that a settlement is fair where, as here, it is the product of arm's-length negotiations between competent and experienced counsel.

### e. Plaintiffs' Counsel Endorse the Settlement

The opinion of the attorneys who engaged in the settlement negotiations and litigated the Action is entitled to significant weight. *See*, e.g., *Isby*, 75 F.3d at 1200 ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable, and adequate."); *In re Mexico Money Transfer Litig.*, (W. Union & Valuta), 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) ("The court places significant weight on the unanimously strong endorsement of these settlements by Plaintiffs' well-respected attorneys.") (citing *Isby*, 75 F.3d at 1200).

Here, Plaintiffs' counsel, who have many years of experience in litigating complex class actions, and who have negotiated numerous class action settlements that have been approved by federal and state courts throughout the United States, have determined that the Settlement is fair, reasonable and adequate. Plaintiffs' counsel's endorsement of the Settlement strongly militates in favor of final approval.

### f. The Stage Of The Proceedings And The Amount Of Discovery Completed

To ensure that a plaintiff has had access to sufficient information to evaluate both its case and the adequacy of a proposed settlement, courts in the Seventh Circuit consider the stage of the proceedings and the discovery taken. *See Isby*, 75 F.3d at 1199; *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011). Here, both the knowledge of Plaintiffs' counsel and the proceedings themselves have reached a stage where a well-founded evaluation of the claims and propriety of settlement could be made.

Due to the short window within which the relief sought (*i.e.*, supplemental disclosures in advance of the imminent stockholder vote on the Reorganization) could be obtained and provide value to the Class, Plaintiffs agreed to preliminarily resolve this case prior to conducting discovery. Plaintiffs, however, conditioned their signing of an MOU on retention of their ability to conduct confirmatory discovery prior to executing the Stipulation of Settlement. After executing the MOU, Defendants produced and Plaintiffs reviewed almost 1,000 pages of internal, confidential Company documents. Plaintiffs also conducted an in-person interview of Mark Vainisi, Walgreen's Divisional Vice President of Mergers & Acquisitions. This discovery confirmed that the Settlement, from the perspective of Plaintiffs and their counsel, was fair, reasonable and adequate.

### C. The Court Should Certify The Settlement Class

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested that the Court preliminarily certify the Class for settlement purposes so that notice of the proposed Settlement, the final approval hearing, and the rights of Class members to request exclusion or object could be issued to the Class. In its Preliminary Approval Order, dated July 14, 2015, this Court preliminarily certified the Class. Plaintiffs submit that nothing has changed to

alter the propriety of certification of the Class and, for all the reasons stated in the Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Approval (ECF No. 25), incorporated herein by reference, Plaintiffs now request that the Court affirm its determinations in the Preliminary Approval Order and finally certify the Class for purposes of carrying out the Settlement. In addition, Plaintiffs request that the Court affirm its certification of Plaintiffs as Class Representatives for the Class and its appointment of Plaintiffs' counsel as Class Counsel for the Class.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated: October 30, 2015

/s/ *Mark B. Goldstein*

Patrick V. Dahlstrom
Mark B. Goldstein
POMERANTZ LLP
Tenth South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Phone: (312) 377-1181
Fax: (312) 377-1184

POMERANTZ LLP
Gustavo F. Bruckner
Anna Manalaysay
600 Third Avenue, 20th Floor
New York, New York 10016
Phone: (212) 661-1100
Fax: (917) 463-1044

FRIEDMAN OSTER & TEJTEL PLLC
Jeremy Friedman
Spencer Oster
David Tejtel
240 E. 79th Street, Suite A
New York, New York 10075
Phone: (888) 529-1108

LAW OFFICE OF ALFRED G. YATES, JR., P.C.
Alfred G. Yates. Jr.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Phone: (412) 391-5164
Fax: (412) 471-1033

DITOMMASO LUBIN, P.C.
Vincent L. DiTommaso
Peter S. Lubin
17 W220 22nd Street, Suite 410
Oakbrook Terrance, Illinois 60181
Phone: (630) 333-0000
Fax: (630) 333-0333

LEVI & KORSINSKY, LLP
Joseph E. Levi
Julia J. Sun
30 Broad Street, 24th Floor
New York, New York 10004
Phone: (212) 363-7500
Fax: (866) 367-6510

*Counsel for Plaintiffs and the Settlement Class*