# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| IN RE WALGREEN CO. STOCKHOLDER LITIGATION | : : : : : : : : : : : | Civil Action No. 1:14-cv-09786<br>CLASS ACTION<br>Judge Joan B. Gottschall<br>**November 20, 2015 Hearing Date** |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................. 2

III. ARGUMENT ...................................................................................................................... 2

   A. The Applicable Legal Standard ................................................................................. 2

   B. The Common Benefit Doctrine Entitles Plaintiffs' Counsel To An Attorneys' Fee Award ......................................................................................................................... 4

   C. Negotiated Resolutions Of Fee Issues Are Preferred And Should Be Upheld ................... 6

   D. The Requested Attorneys' Fee Award Is Reasonable Under A Lodestar Analysis ............ 8

   E. Fee Awards In Similar Cases Support The Fee Request .................................................. 12

IV. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015) .................................................. 11

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
 421 U.S. 240 (1975) ........................................................................................................ 2

*Arbuthnot v. Pierson*,
 2015 WL 3604407 (2d Cir. June 10, 2015) .................................................................. 11

*Beverly Bank v. Board of Review*,
 193 Ill. App. 3d 130 (Ill. App. Ct. 1989) ........................................................................ 8

*Boeing Co. v. Van Gernert*,
 444 U.S. 472 (1980) ........................................................................................................ 2

*Burdett v. Miller*,
 957 F.2d 1375 (7th Cir. 1992) ...................................................................................... 12

*Burford v. Cargill, Inc.*,
 No. 05-0283, 2012 U.S. Dist. LEXIS 161232 (W.D. La. Nov. 8, 2012) ..................... 13

*Chrapliwy v. Uniroyal, Inc.*,
 670 F.2d 760 (7th Cir. 1982) .................................................................................... 9, 10

*City of Providence v. Aeropostale, Inc.*,
 No. 11-Civ.-7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................ 11

*Collier v. Brightpoint, Inc. et al.*,
 No. 1:12-cv-01016, 2013 U.S. Dist. LEXIS 62125 (S.D. Ind. May 1, 2013) .............. 14

*County of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.*,
 No. C.A. 4066-VCN (Del. Ch. Aug. 31, 2009) ............................................................ 14

*Denney v. Wallace et. al.*,
 No. 2:10-cv-01154 (W.D. Pa. Aug 31, 2010) .............................................................. 14

*Deposit Guar. Nat'l Bank v. Roper*,
 445 U.S. 326 (1980) ........................................................................................................ 6

*Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*,
 932 F.2d 591 (7th Cir. 1991) ........................................................................................ 12

*Florin v. Nationsbank of Ga., N.A.*,
 60 F.3d 1245 (7th Cir. 1995) ...................................................................................... 3, 5

*Franklin Balance Sheet Inv. Fund v. Crowley*,
 C.A. No. 888-VCP, 2007 Del. Ch. LEXIS 133 (Del. Ch. Aug. 30, 2007) .................. 13

*Gaskill v. Gordon*,
 160 F.3d 361 (7th Cir. 1998) .......................................................................................... 6

*Hall v. Cole*,
 412 U.S. 1 (1973) ........................................................................................................ 4, 5

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................... 6, 11

*IBEW Local 164 Pension Fund v. Hewitt Assocs., Inc.*,
   No. 10 CH 31612 (Cook Cnty. Ill. Cir. Ct. Feb. 15, 2011) .................................................. 14

*In re Cenco, Inc. Sec. Litig.*,
   519 F. Supp. 322 (N.D. Ill. 1981) ......................................................................................... 12

*In re Cont'l Ill. Sec. Litig.*,
   985 F. 2d 867 (7th Cir. 1993) ................................................................................................ 7

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................................... 3, 7

*In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009) ................................................................................................... 4

*In re GeoEye, Inc., S'holder Litig.*,
   Consol. No. 1:12-cv-00826 (E.D. Va. Sept. 6, 2013) ............................................................ 14

*In re Gould Sec. Litig.*,
   727 F. Supp. 1201 (N.D. Ill. 1989) ....................................................................................... 13

*In re Linerboard Antitrust Litig.*,
   No. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................... 13

*In re NCS Healthcare, Inc. S'holder Litig.*,
   C.A. No. 19786, 2003 Del. Ch. LEXIS 56 (Del. Ch. May 28, 2003) ................................... 13

*In re Plains Res., Inc. S'holders Litig.*,
   C.A. No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005) ..................................... 12

*In re Platinum & Palladium Commod. Litig.*,
   828 F. Supp 2d 588 (S.D.N.Y. 2011) ................................................................................... 11

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................................................. 13

*In re Schering-Plough/Merck Merger Litig.*,
   No. 09-1099, 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) .............................. passim

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) .................................................................................................. 6

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ............................................................................................ 6, 12

*Joy Mfg. Corp. v. Pullman-Peabody Co.*,
   729 F. Supp. 449 (W.D. Pa. 1989) ......................................................................................... 5

*Kahan v. Rosenstiel*,
   424 F.2d 161 (3d Cir. 1970) ................................................................................................... 5

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) .................................................................................................. 3

*Mathur v. Bd. of Trs. of S. Ill. Univ.*,
  317 F.3d 738 (7th Cir. 2003) ............................................................................................. 3, 8

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) ................................................................................................. 2, 3, 4, 5

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................................................ 9

*Mozenter v. Nalco Holding Co.*,
  No. 2011-MR-001043 (DuPage Cnty. Ill. Cir. Ct. June 20, 2012) .......................................... 14

*Muchnick v. First Fed. Sav. & Loan Ass'n*,
  No. 86-1104, 1986 WL 10791 (E.D. Pa. Sept. 30, 1986) ....................................................... 13

*Nicholas v. Telular Corp., et al.*,
  Consol. Case No. 13 CH 11752 (Cook Cnty. Ill. Cir. Ct. DATE 2013) ................................... 14

*Nichting v. DPL, Inc., et al.*,
  Consol. Case No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) ...................................................... 14

*Nicols v. SmithKline Beecham Corp.*,
  No. 00-6222 (E.D. Pa. Apr. 22, 2005) ................................................................................... 13

*Pawlak v. Greenawalt*,
  713 F.2d 972 (3d Cir. 1983) .................................................................................................. 2

*Prandini v. Nat'l Tea Co.*,
  557 F.2d 1015 (3d Cir. 1977) ................................................................................................ 8

*Reid v. Unilever United States, Inc.*,
  2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015) ..................................................... 7, 12

*Ryan ex rel. Maxim Integrated Prods. v. Gifford*,
  C.A. No. 2213, 2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ............................................ 12

*Stein v. Pactiv Corp.*,
  No. 10-CH-35455 (Cook Cnty. Ill. Cir. Ct. Apr. 28, 2011) ..................................................... 14

*Sullivan v. Taylor Capital Group, Inc., et al.*,
  Consol. Case No. 13-CH-18546 (Cook Cnty. Ill. Cir. Ct. 2014) ............................................. 14

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................................... 4

## I. INTRODUCTION[1]

For the benefits conferred though the above-captioned consolidated class action (the "Action"), Plaintiffs seek (and Defendants do not oppose) an award of $370,000 for Plaintiffs' counsel's fees and expenses. As detailed herein, Plaintiffs' counsel devoted significant time and resources to the prosecution of the Action. As a result of these efforts, the class of Walgreen Co. ("Walgreen" or the "Company") stockholders (the "Class") was able to make a fully-informed decision about whether to approve Walgreen's corporate reorganization (the "Reorganization") and the purchase of the portion of Alliance Boots GmbH that Walgreen did not already own for approximately £3.133 billion in cash and 144,333,468 shares of Walgreen common stock (the "Step 2 Acquisition").

As detailed herein, the requested fee and expense award is consistent with – and is, in fact, modest when compared to – awards granted to plaintiff's counsel for obtaining similar relief in precedent actions prosecuted around the nation. Additionally, the requested $370,000 fee award represents a reasonable multiplier of 1.25 times Plaintiffs' counsel's collective lodestar of approximately $293,000.[2] Moreover, only seven Class members (representing a purported

---

[1] All terms not otherwise defined herein have the meaning ascribed to them in Plaintiffs' Memorandum of Law in Support of Plaintiff's Unopposed Motion For Final Approval of The Class Action Settlement (the "Final Approval Brief").

[2] Without including the time and expenses incurred by Plaintiffs' counsel since the submission of the preliminary approval papers on July 2, 2015 (such as time and expenses spent on preparing for and attending the preliminary approval hearing, drafting of the final approval papers, and presenting at the upcoming final approval hearing), Plaintiffs' counsel devoted in excess of 528 hours, plus an additional 8.2 hours from support staff, and incurred $4663 in unreimbursed expenses. After accounting for the expenses incurred as of July 2, 2015, and excluding the time spent by legal support staff, the proposed fee award of $365,336 represents an implied hourly rate of approximately $692, and reflects less than a 1.25 multiplier to Plaintiffs' counsel's lodestar of

1,145.39 shares of Walgreen stock out of a total 945,642,298 shares outstanding (as of November 30, 2014) have objected to the unopposed attorney's fee request.[3] Accordingly, for the reasons stated herein, Plaintiffs request that this Court award to Plaintiffs' counsel attorneys' fees and expenses in the agreed upon amount of $370,000.

II. **FACTUAL BACKGROUND**

A detailed recitation of the facts giving rise to – and the procedural history of – the Action is included in the Stipulation of Settlement. *See* Docket No. 25.

III. **ARGUMENT**

A. **The Applicable Legal Standard**

Courts have long permitted counsel who create a benefit for others to recover their expenses, including reasonable attorneys' fees, from those who enjoy the benefit conferred. *See, e.g., Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 394-95 (1970). Under the common benefit doctrine, "the vindication of the class' rights … is the common benefit conferred on the class that justifies an award of attorneys' fees." *In re Schering-Plough/Merck Merger Litig.*, No. 09-1099, 2010 U.S. Dist. LEXIS 29121, at *5 (D.N.J. Mar. 25, 2010) ("*Merck*") (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983)). The common benefit doctrine is applicable in the context of class and stockholder derivative actions when there is no ascertainable fund from which attorneys' fees can be paid, but the litigation has conferred a

---

$292,978.75. *See* Declarations of Gustavo F. Bruckner, Jeremy Friedman, Julia J. Sun and Peter S. Lubin (collectively, the "Declarations"), each filed on July 2, 2015; Docket No. 25.

[3] Two other Class Members, Reese Edwin and Shirley Ann Toole, jointly responded to the notice but did not actually object to the Settlement or Plaintiff's counsel's fee request.

substantial non-monetary benefit on an ascertainable group and the court has jurisdiction over both the subject matter of the lawsuit and the defendant. *See Mills*, 396 U.S. at 396. As discussed in more detail below, in light of the substantial benefits conferred on Walgreen stockholders, an award of fees and expenses is appropriate here under the common benefit doctrine.

In assessing the reasonableness of the amount of the fee and expense award, courts in the Seventh Circuit may employ "the lodestar method, the percentage of recovery method, or some combination of the two." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 n.2 (7th Cir. 1995). Where, as here, there is no "common fund" from which attorneys' fees can be awarded and the chief relief sought was injunctive in nature, the lodestar method is an appropriate approach for assessing the reasonableness of the fee request. *See Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ("the lodestar approach is best in cases with substantial injunctive or precedent-creating components").

Once the lodestar figure is calculated, the Seventh Circuit permits district courts to adjust the amount up or down after considering various relevant factors, including:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 n.1 (7th Cir. 2003).

Determining the amount of a fee and expense award is a matter that rests within the sound discretion of the trial court. *See In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015). Indeed, in class actions such as this, the Federal Rules of Civil Procedure ("FRCP") explicitly provide courts with the discretion "to award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." FRCP 23(h).

3

For the reasons set forth below, the fee and expense award sought by Plaintiffs' counsel is reasonable and appropriate.

**B. The Common Benefit Doctrine Entitles Plaintiffs' Counsel To An Attorneys' Fee Award**

An award of attorneys' fees is appropriate under the common benefit doctrine if: (1) an attorney confers a substantial benefit, (2) to members of an ascertainable class, and (3) the court ensures that the costs are proportionately spread among that class. *See Hall v. Cole*, 412 U.S. 1, 5 (1973); *Mills*, 396 U.S. at 393-394; *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 546 (3d Cir. 2009). Under this doctrine, attorneys' fees are awardable even though the benefit conferred is purely non-pecuniary in nature. *Mills*, 396 U.S. at 396. Here, an award of the requested fees and expenses is appropriate under the common benefit doctrine because all three elements are satisfied.

As discussed *supra* and in Plaintiffs' Final Approval Brief, Plaintiffs and their counsel conferred a substantial benefit upon Walgreen stockholders by obtaining the Supplemental Disclosures, which enabled Walgreen stockholders to make a fully-informed decision in connection with the stockholder vote on the Reorganization and Step 2 Acquisition. Courts have long recognized that obtaining non-monetary benefits for a class, such as additional material disclosures, can provide substantial value and support a court-approved award of attorneys' fees and reimbursement of expenses.[4] Plaintiffs' counsel's services to the Class were of material value to the stockholders and entitle Plaintiffs' counsel to a reasonable fee award.

---

[4] *See, e.g., Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970) ("In many suits under §14(a), particularly where the violation does not relate to the terms of the transaction for which proxies are solicited, it may be impossible to assign monetary value to the benefit. Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service

4

In addition, the benefiting class consists of a group of readily identifiable beneficiaries defined as "all record holders and beneficial holders of any shares of common stock of Walgreen . . . at any time between and including August 5, 2014 and December 31, 2014 . . . ." The substantial benefit arising from the Action through the Settlement – *i.e.*, the Supplemental Disclosures – were disseminated to all Walgreen stockholders in sufficiently in advance of the stockholder vote on the Reorganization and Step 2 Acquisition to enable them to make an informed decision. In light of these facts, the Class is ascertainable and consists of readily identifiable members. *See Merck*, 2010 U.S. Dist. LEXIS 29121, at *49-51.

Finally, the payment of the requested fee and expense award will be spread proportionally given that Walgreen and/or its insurers have agreed to bear any award of fees and expenses, and no member of the Class is expected to contribute directly to the payment of such an award. *See Hall v. Cole*, 412 U.S. 1, 7 (1973) ("Under these circumstances, reimbursement of the plaintiffs' attorneys' fees out of the corporate treasury simply shifted the costs of litigation to the class that has benefited from them and that would have had to pay them had it brought the suit.") (internal citations omitted); *see also Merck*, 2010 U.S. Dist. LEXIS 29121, at *50-51.

Accordingly, and in light of the substantial benefits conferred on Walgreen stockholders discussed *supra*, Plaintiffs' counsel are entitled to an award of reasonable fees and expenses.

---

to the corporation and its shareholders."); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). ("Courts may also make an exception to the American rule based on equitable doctrines, such as the "common fund" or "equitable fund" doctrine."); *Kahan v. Rosenstiel*, 424 F.2d 161, 166 (3d Cir. 1970) ("the award of attorney's fees is not limited to circumstances in which there is a monetary fund from which fees may be paid, but extends to any situation in which the litigation has conferred a substantial benefit on the members of an ascertainable class"); *Joy Mfg. Corp. v. Pullman-Peabody Co.*, 729 F. Supp. 449, 452-54 (W.D. Pa. 1989).

### C. Negotiated Resolutions Of Fee Issues Are Preferred And Should Be Upheld

The United States Supreme Court lauds the consensual resolution of attorneys' fee awards as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court stated that a "request for attorney's fees should not result in a second major litigation. ***Ideally, of course, litigants will settle the amount of a fee.***" *Id.* at 437 (emphasis added). In representative litigation, it is widely recognized that fee agreements between plaintiffs and defendants are preferred. *See, e.g.*, *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Given the reliance of our legal system on private litigants to enforce substantive provisions of law through representative actions, attorneys providing those essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, otherwise it would be economic for defendants to practice injurious behavior. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980). It has therefore been urged by the Seventh Circuit that in determining a "reasonable fee" in representative actions, the law should "mimic the market." *See, e.g., In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set. The judge, in other words, is trying to mimic the market in legal services."); *In re Cont'l Ill. Sec. Litig.*, 985 F. 2d 867, 872 (7th Cir. 1993) ("The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been

feasible."). In contingent fee arrangements, the "next best evidence" of the attorney's market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Reid v. Unilever United States, Inc.*, 2015 U.S. Dist. LEXIS 75383, *43 (N.D. Ill. June 10, 2015).

Here, the Court does not need to speculate what fee might have been negotiated.[5] Consistent with the foregoing precedents, the Parties negotiated the amount of fees and expenses that Walgreen or its successors will pay to Plaintiffs' counsel for their work on behalf of Walgreen stockholders. Specifically, Walgreen and its successors agreed not to oppose a fee and expense award in an amount up to $370,000. That amount reflects a compromise reached through arm's-length bargaining by informed parties. Importantly, the parties began addressing the issue of attorneys' fees only after reaching agreement on all other terms and provisions of the Settlement. Thus, the agreement to pay attorneys' fees and expenses did not reduce or otherwise affect the benefits to Walgreen stockholders in any way.

Moreover, the parties' negotiations were based upon a knowledgeable analysis of what an appropriate fee would be for the benefits achieved and the fees approved in similar situations. Plaintiff's counsel negotiated with defense counsel, who saw the efforts made by Plaintiff's Counsel firsthand. Defense counsel have an interest in protecting their clients, who have a direct financial stake in the amount of the fees and expenses to be paid. Defendants are represented by highly-skilled lawyers, and do not need (and have not sought) protection from the Court for the

---

[5] Had a direct market determination been unfeasible, the Seventh Circuit directs district courts consider the following factors when determining a reasonable fee award: (1) the risk of nonpayment, (2) the quality of counsel's performance, (3) the amount of work necessary to resolve the litigation, (4) the stakes of the case, and (5) the probability of success at the outset. *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015).

7

results of their own negotiations regarding the amount of the fees and expenses to be paid. All counsel were able to consider and utilize as precedent fee decisions from similar actions. In such circumstances, the end result of those negotiations—which reflects all of the counsel's experience and views as to what is appropriate—is entitled to significant weight in considering Plaintiffs' counsel's fee request. These factors clearly support an award to Plaintiffs' counsel of the full $370,000 negotiated by the Parties. *See, e.g.*, *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015 (3d Cir. 1977) (absent evidence of collusion, a negotiated fee that does not diminish the amount of recovery by a class is entitled to substantial weight and deference.).

### D. The Requested Attorneys' Fee Award Is Reasonable Under A Lodestar Analysis

In setting the lodestar amount, the court "multipl[ies] the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate. Once this amount is calculated, the district court may adjust the amount up or down to take into account various factors regarding the litigation." *See Mathur*, 317 F.3d at 742 (citations omitted).

In determining whether the rates are reasonable, courts within the Seventh Circuit apply the prevailing "community rate standard" – *i.e.*, the market rate prevailing in the community for attorneys with the experience, skill, and qualifications of petitioners doing comparable work. *See Beverly Bank v. Board of Review*, 193 Ill. App. 3d 130, 138 (Ill. App. Ct. 1989). In particular, in determining the reasonableness of the rates charged, the Seventh Circuit has instructed district courts not to limit the hourly rates to local rates charged. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982). In addition, the U.S. Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

The rates charged by Plaintiffs' counsel are reasonable given their legal reputation, experience and status. The experience of conditionally designated Co-Class Counsel, Pomerantz LLP, Friedman Oster & Tejtel PLLC and Levi & Korsinsky LLP, is set forth in the declarations filed with the preliminary approval papers. *See* Declarations. As those submissions show, Plaintiffs' counsel are highly regarded firms that practice extensively in the highly complex and specialized field of stockholder litigation. *See Chrapliwy*, 670 F.2d at 768 (noting that attorneys with specialized skills in a narrow area of law tend to be found in large cities and charge more for performing services in this area of expertise than a general practitioner will charge for performing similar services). All three firms are based in New York City, and therefore it is appropriate for this Court to consider the rates charged by attorneys with comparable skills located there. *See Chrapliwy*, 670 F.2d at 768 (noting that the costs of practicing law will vary from city to city, and such costs will be reflected in the rates of the attorneys).

Specifically, the partners and members of the three Co-Class Counsel firms charge hourly rates of between $550 to $885, and associate fees ranging between $300 and $695, depending on the individual attorney's level of experience in stockholder litigation, as well as the type of practice. These rates are well within the range charged by New York attorneys with comparable experience.[6] As such, this Court should deem the rates charged by Plaintiffs' counsel to be reasonable.[7]

***Excluding*** (a) the time spent by their para-professions and (b) all time spent after July 2, 2015 (including the time spent in preparation for and attendance at the preliminary approval

---

[6] A January 2014 National Law Journal survey found that New York's hourly rates were the highest in the country, with firms whose largest office is based in New York charging an average of $882 per hour for partners and $520 per hour for associates. *See* Karen Sloan, $1,000 Per Hour Isn't Rare Anymore, Nat'l L.J., Jan. 13, 2014, at 1 (Ex. C to the Declaration of Mark Goldstein

The rates charged by Plaintiffs' counsel are reasonable given their legal reputation, experience and status. The experience of conditionally designated Co-Class Counsel, Pomerantz LLP, Friedman Oster & Tejtel PLLC and Levi & Korsinsky LLP, is set forth in the declarations filed with the preliminary approval papers. *See* Declarations. As those submissions show, Plaintiffs' counsel are highly regarded firms that practice extensively in the highly complex and specialized field of stockholder litigation. *See Chrapliwy*, 670 F.2d at 768 (noting that attorneys with specialized skills in a narrow area of law tend to be found in large cities and charge more for performing services in this area of expertise than a general practitioner will charge for performing similar services). All three firms are based in New York City, and therefore it is appropriate for this Court to consider the rates charged by attorneys with comparable skills located there. *See Chrapliwy*, 670 F.2d at 768 (noting that the costs of practicing law will vary from city to city, and such costs will be reflected in the rates of the attorneys).

Specifically, the partners and members of the three Co-Class Counsel firms charge hourly rates of between $550 to $885, and associate fees ranging between $300 and $695, depending on the individual attorney's level of experience in stockholder litigation, as well as the type of practice. These rates are well within the range charged by New York attorneys with comparable experience.[6] As such, this Court should deem the rates charged by Plaintiffs' counsel to be reasonable.[7]

***Excluding*** (a) the time spent by their para-professions and (b) all time spent after July 2, 2015 (including the time spent in preparation for and attendance at the preliminary approval

---

[6] A January 2014 National Law Journal survey found that New York's hourly rates were the highest in the country, with firms whose largest office is based in New York charging an average of $882 per hour for partners and $520 per hour for associates. *See* Karen Sloan, $1,000 Per Hour Isn't Rare Anymore, Nat'l L.J., Jan. 13, 2014, at 1 (Ex. C to the Declaration of Mark Goldstein

hearing, the time drafting the final approval papers and the time that will be spent presenting at the Final Approval Hearing), Plaintiffs' counsel have cumulatively spent more than 528 hours in the prosecution of this Action. *See* Declarations. Applying their reasonable hourly rates, Plaintiff's counsel's collective lodestar is $292,978.75. *See id*. After accounting for the expenses incurred as of July 2, 2015, the proposed fee award of $365,336 reflects less than a 1.25 multiplier to the lodestar of $292,978.75 and represents an implied hourly rate of less than $692. *See id.*

Given the contingent nature of counsel's compensation, a premium over counsel's normal hourly rate is appropriate.[8] In awarding attorney's fees to class counsel, it is appropriate that

---

(the "Goldstein Declaration")). By way of additional comparison, defense firms whose largest office is in New York typically charge hourly fees well above $900 for their partners, whereas defense firms headquartered in other cities charge lower hourly fees – for example, Skadden Arps Slate Meagher & Flom LLP, whose largest office is in Manhattan, has a top partner hourly rate of $1150, with the average being $1035, and top associate billing rate of $845, with the average being $620, whereas Alston & Bird, whose largest office is in Atlanta rather than New York, has a top partner hourly rate of $875, with an average of $675, and a top associate rate of $575, with the average being $425. *See also, e.g., In re Platinum & Palladium Commod. Litig.*, 828 F. Supp 2d 588, Slip Op. at 6-7 (S.D.N.Y. 2011) (citing National Law Journal survey yielding an average hourly partner billing rate of $982 in New York) (Goldstein Declaration Ex. D); *City of Providence v. Aeropostale, Inc.*, No. 11-Civ.-7132 (CM), 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 2015 WL 3604407 (2d Cir. June 10, 2015) (approving billing rates of attorneys in New York firms ranging from $335 to $875 per hour).

[7] *See, e.g., Abbott v. Lockheed Martin Corp*., 2015 U.S. Dist. LEXIS 93206, at *11-12 (S.D. Ill. July 17, 2015) (finding the reasonable hourly rate for Class Counsel's services are as follows: for attorneys with at least 25 years of experience, $974 per hour; for attorneys with 15-24 years of experience, $826 per hour; for attorneys with 5-14 years of experience, $595 per hour; for attorneys with 2-4 years of experience, $447 per hour; for Paralegals and Law Clerks, $300 per hour; for Legal Assistants, $186 per hour).

[8] *See Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (explaining that "[o]n many occasions awarding counsel fees that reflect the full market value of their time will require paying more than their customary hourly rates" and noting that contingency arrangements cause lawyers to bear the risk of non-recovery usually borne by clients in cases where lawyers are paid an hourly rate, and also cause lawyers to forfeit time value of money); *Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*, 932 F.2d 591, 595 (7th Cir. 1991) (noting that contingent litigation weighs heavily in favor of increasing the lodestar because "there were inherent uncertainties in pursuing the

"[o]nce the total number of hours and the hourly rate are calculated ... it is then necessary to consider if the lodestar rate should be increased." *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 326 (N.D. Ill. 1981). The Court may increase the award by applying a "multiplier" to the lodestar amount if it appropriate under the circumstances. *See Reid*, 2015 U.S. Dist. LEXIS 75383 at *8-9. Multipliers are appropriate in "class-action cases, in which a multiplier may take the place of the contingent-fee contract that the lawyers for the class cannot negotiate because they are not actually retained by--they do not make a contract with--the members of the class." *Burdett v. Miller*, 957 F.2d 1375, 1384 (7th Cir. 1992).

The 1.25 multiplier requested here easily falls within the range of implied multipliers that have been found reasonable in other class actions that conferred similar benefits to the class. *See Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*, 932 F.2d 591, 596 (7th Cir. 1991) (affirming a multiplier of 2 and noting that the "benefits [conferred upon] thousands of [class members] are themselves a conclusive demonstration of the public good served by the litigation"); *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1207 (N.D. Ill. 1989) (holding that a multiplier of 1.75 "reasonably reflect[ed] the contingent nature of [the] litigation").[9]

---

claim."); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012) (noting that "once calculated, the lodestar amount may be adjusted"); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, C.A. No. 2213, 2009 Del. Ch. LEXIS 1, at *40 (Del. Ch. Jan. 2, 2009) (explaining that where stockholder plaintiffs' attorneys undertook the case on an entirely contingent basis and faced the possibility of receiving no consideration for their efforts if they were not successful in obtaining a recovery, "an attorney may be entitled to a much larger fee … than when [the attorney's compensation] is fixed on an hourly or contractual basis"); *In re Plains Res., Inc. S'holders Litig.*, C.A. No. 071-N, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) ("[P]laintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders.").

[9] *See, also Burford v. Cargill, Inc.*, No. 05-0283, 2012 U.S. Dist. LEXIS 161232, at *19 n.1 (W.D. La. Nov. 8, 2012) (explaining that a multiplier in "the range of 1 to 4 [is] typically approved by courts within this circuit"); *Muchnick v. First Fed. Sav. & Loan Ass'n*, No. 86-1104,

Similarly, by way of a different comparison, the implied hourly rate of $692 falls well below the amounts awarded in actions touting similar benefits as those achieved by Plaintiffs' Counsel in this Action. *See e.g., Franklin Balance Sheet Inv. Fund v. Crowley*, C.A. No. 888-VCP, 2007 Del. Ch. LEXIS 133, at *46 (Del. Ch. Aug. 30, 2007) (fee award represented an hourly rate of $4,023 per hour); *In re NCS Healthcare, Inc. S'holder Litig.*, C.A. No. 19786, 2003 Del. Ch. LEXIS 56, at *12 (Del. Ch. May 28, 2003) (fee award represented an hourly rate of approximately $3,030 per hour).

In short, the meaningful results and significant efforts expended in the Action establish that the agreed-upon fee and expense award of $370,000 is reasonable.

### E. Fee Awards In Similar Cases Support The Fee Request

During negotiations over an appropriate fee amount for Plaintiffs' counsel, the parties were aware of the range of fees paid in other similar actions. Courts have consistently recognized the value of disclosures in the context of corporate transactions like the instant case. Indeed, courts across the country have awarded plaintiffs' counsel fees and expenses consistent with or higher than the amount requested here in cases where the relief obtained was additional supplemental or curative disclosures. *See, e.g., In re Schering-Plough Corp. Shareholders Derivative Litig.*, C.A. 01-1412, 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) ($3.5 million award, representing a multiplier of 2.18, for obtaining supplemental disclosures); *Nichting v. DPL, Inc., et al.*, Consol. Case No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) (awarding $700,000 in fees and expenses for

---

1986 WL 10791 (E.D. Pa. Sept. 30, 1986) (awarding fee equal to multiplier of 8.3); *Nicols v. SmithKline Beecham Corp.*, No. 00-6222 (E.D. Pa. Apr. 22, 2005) (approving 3.15 multiplier) (Goldstein Declaration Ex. E); *In re Linerboard Antitrust Litig.*, No. 98-5055, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (approving 2.66 multiplier); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 (W.D. Pa. 2003) (approving 2.36 multiplier) *Merck*, 2010 U.S. Dist. LEXIS 29121, at *55-58 (approving a 2.18 multiplier).

obtaining supplemental disclosures) (Goldstein Declaration Ex. F); *Collier v. Brightpoint*, *Inc. et al.*, No. 1:12-cv-01016, 2013 U.S. Dist. LEXIS 62125 (S.D. Ind. May 1, 2013) (awarding $600,000 in fees and expenses for obtaining supplemental disclosures in the context of a merger transaction); *In re GeoEye, Inc., S'holder Litig.*, Consol. No. 1:12-cv-00826, Order and Final Judgment (E.D. Va. Sept. 6, 2013) (awarding fees and expenses totaling $475,000 where sole benefit were supplemental disclosures) (Goldstein Declaration Ex. G); *Denney v. Wallace et. al.*, No. 2:10-cv-10-1154 (W.D. Pa. Sept. 9, 2011) (awarding $475,000 in fees and expenses for obtaining supplemental disclosures in the context of a merger) (Goldstein Declaration Ex. H); *Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.*, No. C.A. 4066-VCN, slip op. at ¶7 (Del. Ch. Aug. 31, 2009) ($950,000 for obtaining additional disclosures) (Goldstein Declaration Ex. I).[10]

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' unopposed motion for an award of $370,000 in attorneys' fees and expenses.

---

[10] *See also Stein v. Pactiv Corp.*, No. 10-CH-35455, slip op. at 4 (Cook Cnty. Ill. Cir. Ct. Apr. 28, 2011) ($860,000 for additional disclosures) (Goldstein Declaration Ex. J); *IBEW Local 164 Pension Fund v. Hewitt Assocs., Inc.*, No. 10 CH 31612, slip op. at 4 (Cook Cnty. Ill. Cir. Ct. Feb. 15, 2011) ($850,000 for additional disclosures) (Goldstein Declaration Ex. K); *Mozenter v. Nalco Holding Co.*, No. 2011-MR-001043, slip op. at 5 (DuPage Cnty. Ill. Cir. Ct. June 20, 2012) ($750,000 for additional disclosures) (Goldstein Declaration Ex. L); *Nicholas v. Telular Corp., et al.*, Consol. Case No. 13 CH 11752 (Cook Cnty. Ill. Cir. Ct. DATE 2013) (awarding $650,000 for additional disclosures) (Goldstein Declaration Ex. M); *Sullivan v. Taylor Capital Group, Inc., et al.*, Consol. Case No. 13-CH-18546 (Cook Cnty. Ill. Cir. Ct. 2014) (awarding $415,000 for additional disclosures) (Goldstein Declaration Ex. N).

Dated: October 30, 2015

/s/ *Mark B. Goldstein*

Patrick V. Dahlstrom
Mark B. Goldstein
POMERANTZ LLP
Tenth South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Phone: (312) 377-1181
Fax: (312) 377-1184

POMERANTZ LLP
Gustavo F. Bruckner
Anna Manalaysay
600 Third Avenue, 20th Floor
New York, New York 10016
Phone: (212) 661-1100
Fax: (917) 463-1044

FRIEDMAN OSTER & TEJTEL PLLC
Jeremy Friedman
Spencer Oster
David Tejtel
240 E. 79th Street, Suite A
New York, New York 10075
Phone: (888) 529-1108

LAW OFFICE OF ALFRED G. YATES, JR., P.C.
Alfred G. Yates. Jr.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Phone: (412) 391-5164
Fax: (412) 471-1033

DITOMMASO LUBIN, P.C.
Vincent L. DiTommaso
Peter S. Lubin
17 W220 22nd Street, Suite 410
Oakbrook Terrance, Illinois 60181
Phone: (630) 333-0000
Fax: (630) 333-0333

LEVI & KORSINSKY, LLP

Joseph E. Levi
Julia J. Sun
30 Broad Street, 24th Floor
New York, New York 10004
Phone: (212) 363-7500
Fax:  (866) 367-6510

*Counsel for Plaintiffs and the Settlement Class*