# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE WALGREEN CO. STOCKHOLDER LITIGATION | Civil No. 1:14-cv-9786 |
| | CLASS ACTION |
| | Judge Joan B. Gottschall |
| JOHN BERLAU, | **November 20, 2015 Hearing Date** |
| Objector. | |

**DECLARATION OF THEODORE H. FRANK**

1. I am an attorney at the Competitive Enterprise Institute and one of the attorneys representing John Berlau. I submit this declaration in connection with the notice of proposed settlement in this action and with the objection of John Berlau. I have personal knowledge of the matters attested in this declaration. My business address is 1899 L St. NW, 12th floor, Washington, DC 20036; my business phone is (202) 331-2263; my email address is ted.frank@cei.org.

2. I founded the 501(c)(3) non-profit public-interest law firm Center for Class Action Fairness in 2009. On October 1, 2015, the Center became part of the 501(c)(3) Competitive Enterprise Institute. Since 2009, the Center has objected to several dozen unfair class-action settlements or fee requests. The Center has won tens of millions of dollars for shareholders by objecting to abuses by class counsel in shareholder class actions and shareholder derivative suits. Adam Liptak of the *New York Times* calls me "the leading critic of abusive class-action settlements." Center attorneys have successfully won over a dozen appeals relating to class-action and shareholder-derivative settlements, including several landmark decisions.

3. I learned of the settlement on October 7, 2015, told CEI employees that the settlement presented an opportunity to take a stand against abusive strike suits, learned that Mr. Berlau was a shareholder and class member, and negotiated a retainer agreement with him over the next week. Because the objection deadline required the objections to be received by November 6, logistics meant we would have to mail the objection on November 5, and we thus completed most substantive work on the Berlau objection on November 4. Mr. Berlau and Center attorneys are busy people with extensive travel schedules, and it took several days and multiple iterations just to negotiate a retainer agreement.

4. At 12:57 a.m. on November 5, Mr. Berlau emailed Melissa Holyoak and I and let us know that he had received that night in his mailbox a postcard with small print giving notice of the *Walgreen* settlement and objection deadline. Because of Mr. Berlau's other commitments today, we will not be able to obtain a signed supplemental declaration from him by the objection deadline documenting this late notice. Ms. Holyoak will file such a declaration on Mr. Berlau's behalf on November 6 or 9. Mr. Berlau holds his Walgreen stock through Fidelity.

5. Mr. Berlau was able to object only because he is a fellow employee of the Competitive Enterprise Institute, and learned of the abusive settlement through me in early October. Had we not notified him of the settlement and of his rights to protest class counsel's abuse of Walgreen shareholders, the late notice would have precluded our representing him and being able to file a timely objection. He is not actually prejudiced by the defective notice plan because of our initiative, and the Court has enough information to uphold our objection without ordering new notice. But, as stated in Mr. Berlau's objection, we object to any settlement approval that approves the constitutionally defective notice.

6. An attorney friend of mine, Lenore Ostrowsky, emailed me today, November 5, to tell me that she and her daughter just got postcard notice of the *Walgreen* settlement and the November 6 deadline on the evening of November 3, and asked if I would be interested in representing her in objecting to the settlement. We cannot feasibly obtain a retainer agreement and sufficient evidence of her class membership by the November 6 deadline, even if Ms. Ostrowsky had emailed me immediately upon receiving the postcard Tuesday evening. I will not be able to obtain a declaration from Ms. Ostrowsky by the November 6 deadline, but she tells me that she holds her stock through Vanguard. If Ms. Ostrowsky agrees to provide a declaration, we will file it in support of Mr. Berlau's objection at the earliest opportunity.

7. In the course of my work, I have experience with the notice procedures in numerous shareholder class actions and shareholder-derivative suits. It is my opinion that experienced class counsel systematically propose notice plans to courts to ensure that individual shareholders like Mr. Berlau and Ms. Ostrowsky, who hold their shares through third-party brokers like Fidelity and Vanguard, fail to get reasonable notice of settlements and fee requests.

8. For example, I hold my shares through Charles Schwab. In the two cases where I have successfully objected on behalf of fellow shareholders, *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012) (Sears Holding) and *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013), I received notice too late to obtain local counsel and had to object *pro se*.

9. In *Citigroup*, I received mailed notice on December 12, 2012, for a settlement with a December 21, 2012 objection deadline and December 6, 2012, opt-out date. In *Robert F. Booth Trust*, I received mailed notice on June 28, 2010, for a settlement with a June 25, 2010 objection deadline.

10. In *In re Riverbed Technology, Inc. Stockholders Litig.*, No. 10484-VCG (Del. Ct. Ch.), an objector I worked with, CEI attorney Sam Kazman, received notice on July 13, 2015, for a

settlement with a July 13, 2015 objection deadline, forcing him to object after the objection deadline without local counsel.

11. The settlement administrator in *Riverbed* was the same as the settlement administrator in this case: Kurtzmann Carson Consultants LLC ("KCC"). According to a sworn affidavit by Markham Sherwood of KCC in that case, it took Fidelity from May 29 to June 29 to provide provide a data list for notice mailing. Though KCC received that notice list on June 29, KCC did not mail Fidelity shareholders notice of the *Riverbed* settlement until July 9, 2015. A true and correct copy of that affidavit is attached as Exhibit 1.

12. In nearly every case where I have represented a shareholder objecting to a class-action or shareholder derivative settlement, I have seen other shareholders who hold stock through brokers be provided late notice. *E.g., In re Johnson & Johnson Shareholder Deriv. Lit.*, No. 10-cv-2033 (D.N.J. Sep. 25, 2012) (continuing fairness hearing and permitting new briefing in response to objections to late notice filed after objection deadline). In a number of cases, shareholders contacted Center attorneys after receiving notice shortly before or after the objection deadline, and the Center did not have the resources to represent them on such short notice.

13. In both *Citigroup* and *Robert F. Booth Trust*, the settling parties attempted to blame Charles Schwab for the late notice. For example, in *Citigroup*, class counsel mailed Charles Schwab with a request for names and addresses of beneficial owners on October 10, 2012, and Charles Schwab did not respond until December 3. And though the *Riverbed* settling parties did not deny that they expected brokerages like Fidelity to comply with the artificial seven-day deadline for turning around a list of names, they blamed Fidelity for the late notice in that case.

14. As the Sherwood affidavit demonstrates, KCC knows that eighty percent of brokerages fail to comply with the artificial seven-day deadline in notice plans, and that structuring a

notice plan dependent upon an artificial seven-day deadline imposed upon brokerages will mean that many shareholders will not receive constitutionally adequate notice. Yet the settling parties represented to the court that a notice plan dependent upon an artificial seven-day deadline imposed upon brokerages would be an adequate notice plan, misleading this Court into approving that constitutionally inadequate notice plan.

15. I predict that the settling parties will attempt to blame Fidelity and Vanguard for the late notice provided to Mr. Berlau and Ms. O. While class counsel will be able to point to a handful of district-court cases overruling objections to late notice, including *Riverbed*, these decisions uniformly fail to consider the fact that parties are deemed to intend the probable consequences of their actions, a notice plan that does not account for the several weeks it will take to obtain names and addresses of beneficial owners from third-party brokerages will simply fail to timely notify individual shareholders of their right to object or opt out, and that the settling parties had constructive notice that their proposed notice plan would fail to actually provide adequate notice to individual shareholders.

16. Class counsel and defense counsel are experienced securities litigators that have settled countless other securities class actions; the settlement administrator KCC Class Action Services is a richly compensated settlement administrator that has experience providing notice to dozens of securities class actions, and has previously provided sworn testimony that most brokerages take weeks to respond to a request to respond within seven days. The parties and the settlement administrator knew or should have known that third-party brokerages take several weeks to respond to requests to voluntarily produce lists of names and addresses of beneficial owners of shares, and that a notice plan that failed to account for this would mean that many shareholders would not receive notice in time to meaningfully object by the November 6 deadline.

17. In both *Citigroup* and *Robert F. Booth Trust*, once it became clear that I was a sophisticated objector who planned to expose the systematic problem of settling parties intentionally devising notice plans that gave inadequate notice to customers of third-party brokerages, the settling parties voluntarily provided new notice to the class and continued the objection deadline and fairness hearing rather than risk a court opinion precluding such abusive tactics in the future. This Court should not countenance such "heads I win, tails don't count" tactics, and should issue a precedential opinion holding that a notice plan that does not provide adequate time—as reflected by the lengthy experience of KCC—to obtain names and addresses of beneficial shareholders to permit them to meaningfully object is *per se* inadequate and a violation of this Court's order requiring "reasonable efforts" to provide notice to beneficial owners. It is not "reasonable" to request a list of names and addresses less than four months before an objection deadline given KCC's knowledge that such a delay will mean that many beneficial owners will not receive adequate notice.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on November 5, 2015, in Washington, DC.

Theodore H. Frank

# EXHIBIT 1

EFiled: Jul 20 2015 07:49PM EDT
Transaction ID 57578742
Case No. 10484-VCG

**IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE**

IN RE RIVERBED TECHNOLOGY, INC. STOCKHOLDERS LITIGATION ) CONSOLIDATED ) C.A. No. 10484-VCG

**SUPPLEMENTAL AFFIDAVIT OF MARKHAM SHERWOOD REGARDING MAILING OF THE NOTICE**

STATE OF CALIFORNIA )
) SS.
COUNTY OF MARIN )

I, Markham Sherwood, being duly sworn, depose and say:

1. I am a Director of Class Actions at Kurtzman Carson Consultants LLC ("KCC"). My business address is 75 Rowland Way, Suite 250, Novato, California 94945. I am familiar with, and have personal knowledge of, the matters stated in this affidavit and am competent to testify about them if called upon to do so.

2. KCC was retained by Riverbed Technology, Inc. ("Riverbed") to act as the Notice Administrator in connection with the settlement of the above-captioned action as its authorized agent to effect mailing of the Notice to potential Class Members, defined as a stockholder of Riverbed Technology, Inc. between

December 14, 2014 and the consummation of the merger on April 24, 2015 (the "Class Period").[1]

3. This affidavit will serve to supplement my previous affidavit regarding mailing of the Notice executed on July 9, 2015 and to provide the Court with additional information regarding the requests received for Notice from brokerage firms, banks and other persons or entities who are members of the Class in their capacities as record holders but not as beneficial owners.

4. On May 29, 2015, KCC caused the Notice to be published by the Depository Trust Company ("DTC") on the DTC Legal Notice System ("LENS"). LENS enables participating banks and financial institutions to review the Notice and contact KCC for copies of the Notice for their beneficial holders. This additional step is designed to provide for electronic notification to participating members so that they are able to commence compiling their respective beneficial owner mailing files as soon as possible.

5. Pursuant to the Scheduling Order, the Notice directed brokerage firms, banks and other persons or entities who are members of the Class in their capacities as record holders, but not as beneficial holders, to either: (a) within seven (7) calendar days of receipt of the Notice, request from the Notice Administrator sufficient copies of the Notice to forward to all such beneficial

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Scheduling Order, dated April 13, 2015.

owners and within seven (7) calendar days of receipt of the copies of the Notice, forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to the Notice Administrator.

6.  The process of mailing to brokerage firms and nominees relies on those firms to request additional copies or send their data files within a reasonable amount of time. As a best practice, KCC recommends inserting this specific time line providing entities seven calendar days to minimize the amount of time between the initial mailing of the Notice to the Nominee Database and subsequent mailing of the Notice to beneficial owners. KCC has found that most requests are received in a timely manner (two to four weeks) and allow for sufficient time for notices to be mailed to beneficial holders. KCC likewise advised counsel in this matter to include the response period referenced above.

7.  As of July 15, 2015, KCC has received a total of 34 requests from brokers, dealers, banks and other nominees requesting Notices to be mailed to such persons or to be sent to the nominees so that they could forward them to their respective beneficial owners. KCC began receiving requests on June 2, 2015, five (5) calendar days from the initial mailing. Seven (20%) of the requests were received within seven (7) days of the initial mailing; twenty six (76%) were received within twenty-one (21) days. Within four (4) weeks of the initial mailing,

KCC had received thirty-two (32), or 94% of the total number of requests received to date. As of today's date, only two (2) entities did not provide KCC with requests for notice within four (4) weeks of the initial mailing.

8. We have confirmed that Fidelity provided their data file for notice mailing on June 29, 2015, requesting that KCC mail Notices to the list of beneficial holders provided. Per standard practices, this request was logged into KCC's system of record and forwarded to the data analysis team within one (1) business day, and then subsequently processed and standardized for mailing within seven (7) business days. Because July 3rd was a holiday, these Notices were delivered to the United States Postal Service for mailing on July 9, 2015.




Markham Sherwood

SWORN AND SUBSCRIBED before me this 20th day of July 2015.

Marina Mc Kenna

Notary Public